**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DONALD R. ZIMMERMAN, SR., a resident of New Castle County, Delaware, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. _____ |
| v. | ) ) ) | JURY TRIAL DEMANDED |
| GT USA WILMINGTON, LLC, a Delaware limited liability company, | ) ) ) | |
| Defendant. | ) ) ) | |

## **COMPLAINT**

### The Parties, Jurisdiction, and Venue

1. Plaintiff Donald R. Zimmerman, Sr. ("Zimmerman"), was a crane operator at the Port of Wilmington ("Port") which is operated by defendant GT USA Wilmington, LLC ("GT"), and its predecessor, Diamond State Port Corporation. Zimmerman was fired by GT on November 17, 2020. At all times relevant, Zimmerman was over the age of 40 having been born in 1967.

2. Defendant GT USA Wilmington, LLC, is a private entity that has entered into a 50-year concession agreement with the State of Delaware to operate the Port of Wilmington. Defendant GT assumed management of the Port on October 3, 2018.

3. Zimmerman began his employment at the Port in May 1986, initially as a forklift operator and subsequently as a crane operator, in which capacity he served until he was fired in November 2020, because of alleged negligence in performing his job duties. Before November 2020, no employee at the Port was ever fired by GT for negligence. Moreover, Zimmerman had not previously been disciplined in his more than 35 years at the Port.

1

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343. This Court also has jurisdiction over the related State law claims pursuant to 28 U.S.C. § 1367.

5. Venue in this Court is proper under 28. U.S.C. § 1391, and this court has personal jurisdiction over the Defendant in this matter because the events giving rise to these claims occurred in this District.

## The Administrative Process

6. Zimmerman completed his questionnaire *pro se* with the Delaware Department of Labor Office of Anti-Discrimination ("DDOL") against GT on October 17, 2021. He alleged race, age, and retaliation as the bases of his discrimination. Zimmerman signed his formal Charge of Discrimination *pro se* on November 4, 2021. He again alleged discrimination based upon race, age, and retaliation. The DDOL assigned his Charge a Charge Number of ZIM101821. It was dual-filed with the US Equal Employment Opportunity Commission ("EEOC") who assigned his Charge a Charge Number of 17C-2022-00016.

7. The DDOL issued a Final Determination and Right to Sue on June 27, 2022. The EEOC issued a Right to Sue Letter on November 23, 2022. It was mailed to Zimmerman's counsel and was received on November 28, 2022.

## The Free Gas Benefit

8. In February or March, 2019, GT initiated a practice of allowing "authorized" individuals to receive daily up to five gallons of gasoline cost-free. "Authorized" individuals generally were union-represented employees who used their personal vehicles (pick-up trucks) for work-related purposes. GT never provided employees operating the gasoline pump (referred to as "gear men") a list of "authorized" individuals.

9. The procedures for obtaining the free gas benefit were very loose. Typically, individuals pulling up to the pump were simply asked by a gear man on duty whether they were authorized to receive free gas and, if so, how many gallons. Under an honor system, individuals were routinely taken at their word.

10. GT did not have written (or unwritten) rules governing the free gas benefit – other than a hand-written cardboard sign at the pump indicating a 5 gallon daily limit. However, employees not uncommonly pumped more than 5 gallons on a particular day to compensate for days they had "missed."

11. Before November 2020, GT had never disciplined, much less fired, an employee for "allowing" an unauthorized individual to pump gas or to pump more than the allotted five gallons per day.

### The Alleged Gas Heist of November 10, 2020

12. On November 10, 2020, Zimmerman and a co-worker (Alvin Jones) were operating the pump as "gear men" when Tim Miller, a black employee, pulled up in his personal vehicle. Miller, who also was a qualified "gear man," activated the pump and began dispensing fuel.

13. Zimmerman asked Miller if he was authorized to receive fuel. Miller responded affirmatively. Zimmerman accepted Miller at his word, as was the common practice at the Port. Nonetheless, Alvin Jones, for reasons that remain unclear, reported to management on November 10 a "theft" of gasoline by Miller. Jones did not inculpate Zimmerman.

14. On November 11, GT's warehouse manager, Michael Phillips, summoned Zimmerman to his office. At the outset of the meeting, Zimmerman requested union representation. Phillips denied the request, disingenuously assuring Zimmerman that he was not a target of discipline. Phillips explained that management simply was conducting a gas audit.

15. As part of the "audit," Phillips pointedly asked Zimmerman whether he had ever given fuel to an unauthorized individual. Zimmerman responded "not to his knowledge," noting that without a list he could not determine who among the hundreds of employees working at the Port on a typical day, were authorized and who were not.

16. GT suspended Zimmerman pending the outcome of an investigation. On November 17, GT fired Zimmerman without conducting a serious investigation of the alleged gas heist by his co-worker, Tim Miller. GT also banned Zimmerman from entering the Port, which precluded his employment by other employers operating at the Port.

17. On November 17, GT said that they fired Zimmerman because he "knowingly allow[ed] the unauthorized distribution of fuel to individuals [Tim Miller] not entitled to receive the fuel." GT also permanently banned Zimmerman "from entering the Port of Wilmington."

**Zimmerman Files Grievance and Pursues Arbitration**

18. On November 18, Zimmerman's then-Union, ILA Local 1694-1, filed a grievance alleging that Zimmerman was fired without just cause in violation of the CBA.

19. On December 7, GT denied the grievance at Step 3. GT abandoned its claim that Zimmerman acted intentionally. GT claimed instead that Zimmerman's discharge was justified because he "negligently" allowed Miller to pump gas and then "negligently" failed to notify management of an alleged theft.

20. Alternatively, GT claimed that even if Zimmerman honestly believed that Miller was authorized to pump gas, discharge was still warranted because Miller exceeded the five-gallon daily limit.

21. On December 15, the Union's Executive Board voted unanimously to take Zimmerman's grievance to arbitration (Step 4). On March 4, 2021, the American Arbitration Association scheduled a hearing for May 17, 2021.

22. Effective March 11, 2021, ILA Local 1694-1 was dissolved. Its former members became members of one of three ILA Locals (Locals 1694, 1883 and 1884) depending upon job classification. As a crane operator, Zimmerman became a member of Local 1694. A "Merger Agreement" reflecting the foregoing was entered into on March 12, 2021.

23. Under the Agreement, Local 1694 agreed to "honor" existing contractual arrangements and to assume "all collective bargaining duties and responsibilities" undertaken by Local 1694-1 before the merger.

24. Notwithstanding the Agreement, and in breach of its duty of fair representation, Local 1694 withdrew Zimmerman's grievance from arbitration at the end of March, 2021. Local 1694's withdrawal of the grievance from arbitration, which violated the terms of the Merger Agreement, was void *ab initio*. In April, 2021, Zimmerman informed the American Arbitration Association of his intention to go forward with the scheduled hearing "with or without" Local 1694, but the arbitral forum cancelled the hearing and closed the case.

### GT Maliciously Initiates Criminal Proceedings Against Zimmerman

25. Between November 10, 2020, and December 22, 2020, an unknown individual or individuals at GT made the decision to have Zimmerman arrested for an alleged theft of gasoline valuing approximately $45.00. The arrest was in addition to being suspended and then terminated. Upon information and belief, an unknown individual or individuals directed Jerry Custis, the Head of Security for GT at the Port, to contact the Wilmington Police to have Zimmerman arrested.

26. On December 22, 2020, Jerry Custis made contact with the Wilmington Police Department to swear out an arrest warrant against Zimmerman. The warrant charged Zimmerman with two criminal offenses, including theft (Zimmerman "did take, obtain or exercise control over, with the intent to deprive or appropriate, property consisting of..." gasoline) and conspiracy to commit theft (Zimmerman "did intend to promote or facilitate the commission of a misdemeanor...."). At the request of GT, a "no contact" order was entered by the court, barring Zimmerman's entry into the Port.

27. On January 2, 2021, Zimmerman learned of the outstanding arrest warrant. On January 5, he turned himself in at a Wilmington police station.

28. On approximately February 1, 2021, the court lifted the "no contact" order, but GT still denied Zimmerman access to the Port.

29. On April 19, 2021, the bogus theft and conspiracy charges were dismissed through *nolle prosequi* and in Zimmerman's favor.

30. On the evening of March 19, 2022, around 7:00 p.m., Mr. Zimmerman went to the Port to work for Delaware River Stevedoring ("DRS"). He was going to load a vessel being loaded by DRS. A gentleman named Morton was the supervisor of the job. Around 11:00 p.m., security officers for the Port came to the vessel and told Zimmerman he needed to leave the property. Zimmerman has not been paid for his work on March 19, 2022. He called Dave Norbett, an official with DRS, to inquire about his pay. Mr. Zimmerman was told that ILA 1694 is refusing to submit his payment.

## Zimmerman's Damages

31. Zimmerman earned significant wages working at the Port, earning approximately $200,000 per year at times. Zimmerman lost his ability to earn these wages when he was

terminated by Defendant GT and subsequently barred from entering the Port. This loss of substantial income has also caused financial stress, extreme emotional distress, and loss of enjoyment of and disruption to life to Zimmerman.

### COUNT I – DISPARATE TREATMENT BASED UPON RACE
### (TERMINATION IN VIOLATION OF TITLE VII & DDEA)

32. Plaintiff incorporates all of the foregoing allegations as if they are specifically stated herein.

33. As a white man, Zimmerman was in the minority of ILA Local 1694-1 and ILA Local 1694. Upon information and belief, as a white man, Zimmerman was in the minority demographic for employees of GT.

34. Zimmerman was qualified for his job as he had been employed at the Port for over thirty years.

35. As indicated above, Zimmerman, a white employee, and Miller, a black employee, were not at all similarly situated, but were treated as if they were. Miller was the alleged active wrongdoer who intentionally "deprived" GT of 18 gallons of its gasoline to which he was not entitled. Zimmerman was at most an "enabler," who negligently failed to prevent (or report) Miller's alleged theft. Yet, Zimmerman was disciplined as if he too were an active wrongdoer.

36. If Zimmerman were black – or Miller white – Zimmerman would not have been fired. GT fired Zimmerman in order to stave off a potential lawsuit by Miller claiming racially disparate treatment.

37. GT has a pattern of disciplining black workers more leniently than similarly situated white workers. Eric Henry, a black worker employed by GT, was caught stealing but was not fired. Dion Brown, a black worker, was charged with the negligent operation of a crane but

was not fired even though his negligence, in contrast to Zimmerman's alleged negligence, placed lives at risk.

38. As a result of the discrimination based upon Zimmerman's race, Zimmerman suffered the damages stated in Paragraph 31.

39. This willful, intentional, and unlawful action violates the laws and regulations of the United States, including, without limitation 42 U.S.C. § 2000e, *et seq.*, and Delaware, including, without limitation, 19 Del. C. § 710, *et seq.*

### COUNT II – DISPARATE TREATMENT BASED UPON RACE
### (FAILURE TO HIRE IN VIOLATION OF TITLE VII & DDEA)

40. Plaintiff incorporates all of the foregoing allegations as if they are specifically stated herein.

41. As a white man, Zimmerman was in the minority of ILA Local 1694-1 and ILA Local 1694. Upon information and belief, as a white man, Zimmerman was in the minority demographic for employees of GT.

42. Zimmerman was qualified for his job as he had been employed at the Port for over thirty years.

43. In May or June 2021, GT faced labor shortages at the Port as a result of an economic upsurge a year or so into the pandemic. To relieve the labor shortages, GT reinstated several black workers, but not a single white worker – including Zimmerman whose seniority was far greater than the seniority of the black workers reinstated by GT.

44. GT has a pattern of disciplining black workers more leniently than similarly situated white workers. Eric Henry, a black worker employed by GT, was caught stealing but was not fired. Dion Brown, a black worker, was charged with the negligent operation of a crane but

was not fired even though his negligence, in contrast to Zimmerman's alleged negligence, placed lives at risk.

45. As a result of the discrimination based upon Zimmerman's race, Zimmerman suffered the damages stated in Paragraph 31.

46. This willful, intentional, and unlawful action violates the laws and regulations of the United States, including, without limitation 42 U.S.C. § 2000e, *et seq.*, and Delaware, including, without limitation, 19 Del. C. § 710, *et seq.*

### COUNT III – HOSTILE WORK ENVIRONMENT BASED UPON RACE
### (TITLE VII & DDEA)

47. Plaintiff incorporates all of the foregoing allegations as if they are specifically stated herein.

48. As a white man, Zimmerman was in the minority of ILA Local 1694-1 and ILA Local 1694. Upon information and belief, as a white man, Zimmerman was in the minority demographic for employees of GT.

49. Zimmerman was subject to intentional harassment by GT because of his race that included:

   a. November 11, 2020 – GT suspends Zimmerman for two weeks for "unauthorized distribution of fuel to individuals not entitled to receive the fuel";

   b. November 17, 2020 – GT terminates Zimmerman for "knowingly allowing an unauthorized employee to receive fuel";

   c. December 7, 2020 – GT rejects Zimmerman's 3rd step grievance acknowledging the termination was "for negligence in performing his job duties and involvement in a theft of fuel at the Port";

   d. December 8, 2020 – GT rejects a 4th step grievance by Zimmerman;

9

    e. December 22, 2020 – GT files criminal charges against Zimmerman for stealing fuel and conspiracy to do so;

    f. February 1, 2021 – GT continues to refuse Zimmerman entry/access to the Port despite the fact that the "No Contact Order", which was part of the criminal charges of December 22, 2020, was rescinded on this date;

    g. May/June 2021 – GT brings back to work black workers who had been let go for cause, but it does not bring back to work Zimmerman, a white man who had been let go (allegedly) for cause; and

    h. March 19, 2022 – GT removes Zimmerman from the Port when he was doing work for DRS.

50. The foregoing acts constitute conduct that is part of a continuing practice that stretched from, at least, November 2020 through March 2022.

51. The foregoing acts constitute severe or pervasive harassment.

52. The foregoing acts would detrimentally affect a reasonable person and did, in fact detrimentally affect Zimmerman.

53. Upon information and belief, an unknown individual or individual(s) in management at GT directed this harassment against Zimmerman and/or were aware or should have been aware that it was occurring.

54. As a result of the discrimination based upon Zimmerman's race, Zimmerman suffered the damages stated in Paragraph 31.

55. This willful, intentional, and unlawful action violates the laws and regulations of the United States, including, without limitation 42 U.S.C. § 2000e, *et seq.*, and Delaware, including, without limitation, 19 Del. C. § 710, *et seq.*

### COUNT IV – DISPARATE TREATMENT BASED UPON AGE
### (TERMINATION IN VIOLATION OF ADEA & DDEA)

56. Plaintiff incorporates all of the foregoing allegations as if they are specifically stated herein.

57. At all times relevant, Zimmerman was over the age of 40. Zimmerman was among the older employees of GT.

58. Zimmerman was qualified for his job as he had been employed at the Port for over thirty years.

59. Because Zimmerman was an older employee working in a physical environment, GT terminated Zimmerman in November 2021.

60. As a result of the discrimination based upon Zimmerman's age, Zimmerman suffered the damages stated in Paragraph 31.

61. This willful, intentional, and unlawful action violates the laws and regulations of the United States, including, without limitation 29 U.S.C. § 621, *et seq.*, and Delaware, including, without limitation, 19 Del. C. § 710, *et seq.*

### COUNT V – DISPARATE TREATMENT BASED UPON AGE
### (FAILURE TO HIRE IN VIOLATION OF ADEA & DDEA)

62. Plaintiff incorporates all of the foregoing allegations as if they are specifically stated herein.

63. At all times relevant, Zimmerman was over the age of 40. Zimmerman was among the older employees of GT.

64. Zimmerman was qualified for his job as he had been employed at the Port for over thirty years.

65. Because Zimmerman was an older employee, GT failed to re-hire Zimmerman when faced with the labor shortage in May or June of 2021.

66. As a result of the discrimination based upon Zimmerman's age, Zimmerman suffered the damages stated in Paragraph 31.

67. This willful, intentional, and unlawful action violates the laws and regulations of the United States, including, without limitation 29 U.S.C. § 621, *et seq.*, and Delaware, including, without limitation, 19 Del. C. § 710, *et seq.*

### COUNT VI – HOSTILE WORK ENVIRONMENT BASED UPON AGE
### (ADEA VII & DDEA)

68. Plaintiff incorporates all of the foregoing allegations as if they are specifically stated herein.

69. At all times relevant, Zimmerman was over the age of 40. Zimmerman was among the older employees of GT.

70. Because Zimmerman was an older employee working in a physical environment, Zimmerman endured the following intentional harassment based on his age:

   a. November 11, 2020 – GT suspends Zimmerman for two weeks for "unauthorized distribution of fuel to individuals not entitled to receive the fuel";

   b. November 17, 2020 – GT terminates Zimmerman for "knowingly allowing an unauthorized employee to receive fuel";

   c. December 7, 2020 – GT rejects Zimmerman's 3rd step grievance acknowledging the termination was "for negligence in performing his job duties and involvement in a theft of fuel at the Port";

   d. December 8, 2020 – GT rejects a 4th step grievance by Zimmerman;

    e. December 22, 2020 – GT files criminal charges against Zimmerman for stealing fuel and conspiracy to do so;

    f. February 1, 2021 – GT continues to refuse Zimmerman entry/access to the Port despite the fact that the "No Contact Order", which was part of the criminal charges of December 22, 2020, was rescinded on this date;

    g. May/June 2021 – GT brings back to work black workers who had been let go for cause, but it does not bring back to work Zimmerman, a white man who had been let go (allegedly) for cause; and

    h. March 19, 2022 – GT removes Zimmerman from the Port when he was doing work for DRS.

71. The foregoing acts constitute conduct that is part of a continuing practice that stretched from, at least, November 2020 through March 2022.

72. The foregoing acts constitute severe or pervasive harassment.

73. The foregoing acts would detrimentally affect a reasonable person and did, in fact detrimentally affect Zimmerman.

74. Upon information and belief, an unknown individual or individual(s) in management at GT directed this harassment against Zimmerman and/or were aware or should have been aware that it was occurring.

75. As a result of the discrimination based upon Zimmerman's age, Zimmerman suffered the damages stated in Paragraph 31.

76. This willful, intentional, and unlawful action violates the laws and regulations of the United States, including, without limitation 29 U.S.C. § 621, *et seq.*, and Delaware, including, without limitation, 19 Del. C. § 710, *et seq.*

WHEREFORE Plaintiff Donald R. Zimmerman, Sr., respectfully requests this Court:

A. Enter judgment in his favor and against GT USA Wilmington, LLC;

B. Award him back pay and front pay as he can prove;

C. Award him compensatory damages;

D. Award him special damages as he can prove;

E. Award him costs and attorneys' fees;

F. Award him pre- and post-judgment interest; and

G. Grant such other relief as the Court deems appropriate.

**JACOBS & CRUMPLAR, P.A.**

 /s/ Patrick C. Gallagher
Patrick C. Gallagher, Esq. (DE 5170)
750 Shipyard Drive, Suite 200
Wilmington, DE  19801
(t) (302) 656-5445
(f) (302) 656-5875
pat@jcdelaw.com
*Attorney for Plaintiff*

DATE:  February 23, 2023